UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Maikijah Ha'Keem, Roy Hughes, Jimmy
Booker,[1] and Jacquard Larkin,

        Plaintiffs,

v.

Chad Mesojedec, Troy Basaraba, Elizabeth
Wyatt, Kevin Schleret, Mandy Torgerson,
Kevin Moser, and Nick Lammi,

        Defendants.

Case No. 16-cv-348 (JNE/SER)

REPORT AND RECOMMENDATION

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendants' Motion to Dismiss [Doc. No. 13]. This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying the Motion to Dismiss without prejudice.

**I.     BACKGROUND**

Plaintiffs Maikijah Ha'Keem ("Ha'Keem"), Roy Hughes ("Hughes"), Jimmy Booker ("Booker"), and Jacquard Larkin ("Larkin") (collectively, "Plaintiffs")—who are Muslims civilly committed in the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota—initiated this lawsuit on February 10, 2016. (Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983, "Compl.") [Doc. No. 1]. Plaintiffs assert that Defendants, who are employees of MSOP, deprived them of their constitutional rights under the First Amendment; violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42

---

[1]     Plaintiffs ask that Plaintiff James Booker's name be corrected to Jimmy Booker. (Pls.' Resp. & Mem. of Law to Defs.' Mot. to Dismiss, "Mem. in Opp'n") [Doc. No. 23 at 1 n.1]. The Court recommends this request be granted.

U.S.C. §§ 2000cc–2000cc-5; and violated the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb–2000bb-4. *See generally* (*id.*). Plaintiffs allege specifically as follows:

Defendant Chad Mesojedec ("Mesojedec"), who is the rehabilitation therapies director, posted a memorandum titled "Client Use of Spiritual Rooms for Required Daily Personal Prayer" (the "Memo"). (*Id.* ¶ 10); *see also* (*id.* ¶ 7(b)) (stating that Mesojedec is the rehabilitation therapies director). Among other requirements, the Memo states that "[p]rayer oil will not be provided for personal prayer." (*Id.*).

Plaintiffs also allege that Defendants have substantially burdened their religious rights by either prohibiting the use of prayer oils or by allowing non-Muslims to "control" and "ration" their prayer oils. (*Id.* ¶¶ 11, 13, 23, 32). Plaintiffs allege that "[t]he denial of prayer oils for Plaintiffs' religious services is considered a denial of a sacred item, as prayer oils are sacred." (*Id.* ¶ 14). To this end, Ha'Keem sent a written request to Peter Puffer ("Puffer"), stating that Mesojedec "does not have the right to control our faith" with respect to using prayer oils.[2] (*Id.* ¶ 20). Puffer responded that, based on MSOP policy, prayer oils may be used but individual clients may not be in possession of them. (*Id.*). On December 7, 2016, an MSOP employee, Sandra Bryant ("Bryant"), responded to Ha'Keem's request for information regarding a volunteer's letter addressing prayer oils. (*Id.* ¶ 31). Bryant stated that "no changes in the way oils will be dispensed will be made, with or without volunteer support." (*Id.*). Plaintiffs also allege that "denying religious items such as prayer oils etc." violates RFRA. (*Id.* ¶ 26).

In addition to their claims regarding prayer oils, Plaintiffs make several additional

---

[2]   Although Plaintiffs identify Puffer as a defendant, he is not identified as a defendant in the case caption or the list of Defendants elsewhere in the Complaint. *Compare* (Compl. at 1) *and* (*id.* ¶ 7) *with* (*id.* ¶ 20).

allegations. On November 7, 2014, Ha'Keem and Hughes stepped out of the Jumah prayer service to discuss a religious issue. (*Id.* ¶ 16). Defendant Nick Lammi ("Lammi") "confronted" Hughes about a threat, and Hughes explained, somewhat confusingly, that "there was no 'threat,' and that the only issue was about whether or not Mr. Ha'Keem was threatening another client." (*Id.*); *see also* (*id.* ¶ 19). Ha'Keem and Hughes explained that they had left the prayer service because "according to the Islam religion, there can be no talking during services." (*Id.* ¶ 16); *see also* (*id.* ¶ 17). Lammi said that "he did not care," and that the conversation "was to be taken care of in the room, not outside in the hallway." (*Id.* ¶ 16). Lammi wrote an incident report, which Plaintiffs contend is "falsified." (*Id.*). Plaintiffs allege that Defendants do not permit individuals in prayer to step out to discuss religious issues, as required by their religion. (*Id.* ¶ 21).

Hughes was subject to a pat search by a female member of the MSOP staff, which Hughes alleges substantially violates his free exercise of religion. (*Id.* ¶ 18). Hughes's sincerely held religious belief is that "being pat searched by female staff violates his understanding of [the] tenants of Islam" and Plaintiffs allege that MSOP failed to provide pat searches performed by same-gender staff. (*Id.*); *see also* (*id.* ¶ 27). They argue their religious rights are infringed by this conduct because there is no compelling government interest in the policy and that Defendants cannot show that these searches "are the least restrictive means of furthering such compelling interests." (*Id.* ¶ 25).

Plaintiffs allege that "numerous staff . . . have been disrespectful towards Muslims, and have made inappropriate statements regarding Muslims wearing their Kufi," and that these actions violate their constitutional rights. (*Id.* ¶ 24).

Plaintiffs allege that Ha'Keem's prayer rug was ruined during his absence from MSOP from July 29, 2014, to September 26, 2014. (*Id.* ¶ 28). Ha'Keem was told that "[s]taff did not

3

intentionally or maliciously damage" his prayer rug and that he could file a tort claim. (*Id.*). Plaintiffs allege that these actions violated Ha'Keem's First and Fourteenth Amendment rights. (*Id.*).

Plaintiffs also allege the following actions "infringe on and hinder Plaintiffs['] religious rights":

> (1) Plaintiff[s'] classification to high security status; (2) denial of five daily congregate prayers; (3) lack of Jumah services if an Islamic chaplain is not available; (4) no timely prayer at the end of Ramadan; (5) inability to purchase essential Islamic items such as oils, toothsticks [sic], incense, leather socks, a compass, Halal toothpaste and other toiletries; (6) no Halal meats on the common fare menu; (7) the denial of inmate chaplains; (8) improper handling of the Quran by MSOP staff; (9) physical and psychological discrimination because of Plaintiffs['] faith; (10) discarding of Plaintiffs' personal property by MSOP without notice[;] and (11) refusal to comply with [RLUIPA].

(*Id.* ¶ 23).

Defendants moved to dismiss the complaint on June 30, 2016. Defendants argue the Complaint should be dismissed in its entirety for the following reasons: (1) Plaintiffs' claims fail to plausibly allege Defendants violated federal law because they have not alleged that MSOP employees' alleged wrongful actions substantially burdened their religious rights, because Plaintiffs fail to allege that MSOP is subject to RLUIPA, and because "RFRA has been held unconstitutional when applied to the state or state entity like MSOP"; (2) the Court lacks subject matter jurisdiction over Plaintiffs' claims against Defendants in their official capacities for money damages under the Eleventh Amendment; (3) in some claims, Plaintiffs failed to plead a policy or custom that caused the constitutional violations; (4) RLUIPA does not authorize claims against Defendants in their individual capacities; (5) Plaintiffs fail to plead sufficient personal involvement to maintain individual capacity claims against all but two of the Defendants; and (6) to the extent Defendants are sued in their individual capacities, they are entitled to qualified

immunity. (Mem. of Law in Supp. of Mot. to Dismiss, "Mem. in Supp.") [Doc. No. 15 at 8–29].

Plaintiffs responded to the Motion to Dismiss, and Defendants filed a reply.[3] (Mem. in Opp'n); (Reply in Supp. of Mot. to Dismiss) [Doc. No. 24]. The Motion to Dismiss is now fully briefed and ripe for consideration.

## II. DISCUSSION

### A. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. The "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pro se pleadings must be construed liberally, but they "may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### B. Analysis

In response to the Motion to Dismiss, Plaintiffs express a desire to amend their complaint to cure the deficiencies Defendants identified. *See, e.g.*, (Mem. in Opp'n at 12, 16, 18). Although Plaintiffs did not formally file a motion to amend the complaint, the Court nonetheless considers their proposal as such in order "to secure the just, speedy, and inexpensive determination of" this action. *See* Fed. R. Civ. P. 1.

The Court concludes that Plaintiffs should be permitted a final opportunity to amend their

---

[3] Although not permitted by the Local Rules, Plaintiffs also filed a response to Defendants' Reply. (Pls.' Resp. & Mem. of Law in Resp. to Defs.' Reply in Supp. of Their Mot. to Dismiss) [Doc. No. 30]; *see* LR 7.1(c) (permitting only the filing of an initial memorandum, responding memorandum, and reply memorandum); LR7.1(i) ("Except with the court's prior permission, a party must not file a memorandum of law except as expressly allowed under LR 7.1."). Nonetheless, the Court has reviewed Plaintiffs' additional memorandum.

complaint to address the deficiencies addressed in Defendants' Motion to Dismiss. "[D]ecisions from the Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures." *Holmseth v. City of E. Grand Forks*, No. 14-cv-2970 (DWF/LIB), 2015 WL 4488424, at *20 (D. Minn. July 23, 2015) (Brisbois, Mag. J., as adopted by Frank, J.). Even if this Court recommended granting Defendants' Motion to Dismiss (in whole or in part), it would recommend that the dismissal be without prejudice. *See id.* This would permit Plaintiffs either to file a new case on the same grounds or to file a motion to amend the complaint. A court should "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Thus, the Court and the parties may be facing yet another round of briefing in a few months on the same or substantially similar issues.

Instead, the Court finds the parties' resources—and the Court's—are better served by recommending that Defendants' Motion to Dismiss be denied without prejudice and permitting Plaintiffs to amend their complaint within thirty days of an order adopting this Report and Recommendation. Plaintiffs are now well aware of the weaknesses in their Complaint. Indeed, Defendants' Motion to Dismiss offers several grounds for dismissal, some of which overlap in terms of the claims and parties. *See generally* (Mem. in Supp.). Thus, Plaintiffs have the ability to address the deficiencies in their complaint and the Court and Defendants can be assured that an amended complaint is the pleading on which Plaintiffs intend to rely.

If Plaintiffs fail to cure the deficiencies in an amended complaint, any future request to do so will be viewed in the context of this Report and Recommendation and Plaintiffs' past

knowledge of deficiencies through the instant Motion to Dismiss. In other words, Plaintiffs are cautioned that a failure to cure deficiencies may weigh against allowing subsequent amended pleadings. *Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, **repeated failure to cure deficiencies by amendments previously allowed**, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" (emphasis added)).

### III.   RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendants' Motion to Dismiss [Doc. No.13] be **DENIED without prejudice**;

2.   Plaintiffs be permitted to file an amended complaint within **thirty (30) days** of an order adopting this Report and Recommendation; and

3.   The Clerk's Office be directed to change Plaintiff James Booker's name to Jimmy Booker.


Dated: December 29, 2016

                                           *s/Steven E. Rau*
                                           STEVEN E. RAU
                                           United States Magistrate Judge


### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a

copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.