## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Maikijah Ha'Keem, Roy Hughes, Jimmy Booker, and Jacquard Larkin, | Case No. 16-cv-348 (JNE/SER) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Chad Mesojedec, *Rehabilitation Therapist Director*, Steve Sayovitz, *Security Manager*, Elizabeth Wyatt, *Security Counselor*, Kevin Schleret, *Property Personnel*, Many Torgerson, *Property Supervisor*, Kevin Moser, *MSOP-Moose Lake Facility Director*, Nick Lammi, *Rehabilitation Counselor*, Scott Benoit, *Program Manager-MSOP-Moose Lake*, Terry Kneisel, *Assistant Facility Director-MSOP-Moose Lake*, and Peter Puffer, *Clinical Director MSOP-Moose Lake*, | |
| Defendants. | |

The above-captioned case comes before the undersigned on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. (ECF No. 37). This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, this Court recommends granting Defendants' motion and dismissing this case.

## I.    PROCEDURAL BACKGROUND

Plaintiffs Maikijah Ha'Keem, Roy Hughes, Jimmy Booker, and Jacquard Larkin—who are Muslims civilly committed in the Minnesota Sex Offender Program ("MSOP")

in Moose Lake, Minnesota—initiated this lawsuit on February 10, 2016. (Compl., ECF No. 1). Plaintiffs asserted that Defendants, who are employees of MSOP, deprived them of their constitutional rights under the First Amendment; violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5; and violated the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb–2000bb-4. Defendants moved to dismiss the complaint on various grounds, including failure to state a claim, lack of subject matter jurisdiction over certain claims, pleading deficiencies, and qualified immunity. In response, Plaintiffs expressed a desire to amend their complaint to cure the deficiencies identified by Defendants in their motion to dismiss. The Court permitted Plaintiffs to file an amended complaint and denied Defendants' motion to dismiss without prejudice. (ECF Nos. 34, 35).

Plaintiffs filed their amended complaint on March 8, 2017. (Am. Compl., ECF No. 36).[1] Defendants moved to dismiss and the parties briefed the motion. This case was then stayed as it was deemed sufficiently related to the ongoing litigation of *Karsjens, et al. v. Piper, et al.*, Case No. 11-cv-3659 (DWF/TNL). (ECF No. 49). The stay was eventually lifted, (ECF No. 50), and this Court permitted the parties an opportunity to file supplemental briefing addressing any changes in law that may affect the Court's analysis

---

[1] Plaintiffs were instructed to file their amended complaint within 30 days of January 25, 2017. (ECF No. 35, at 2). Defendants argue the amended complaint should be dismissed because it is untimely. Plaintiffs assert they did not receive the January 25, 2017 Order in the mail until February 2, 2017 and mailed their amended complaint on March 6, 2017 once they had funds for postage. The Eighth Circuit has noted that rules of procedure "should be liberally construed, and mere technicalities should not foreclose . . . consideration of a case on its merits." *Klaudt v. U.S. Dep't of Interior*, 990 F.2d 409, 411 (8th Cir. 1993). Ultimately, Plaintiffs complied by sending an amended complaint. The delay in sending the amended complaint has not hindered the advancement of this case, particularly considering the stay imposed, so this Court does not recommend dismissal on timeliness grounds.

of the already-submitted motion to dismiss. (ECF No. 51). The parties have submitted their supplemental briefs and the motion is ripe for determination. (ECF Nos. 52, 54).[2]

## II. FACTUAL BACKGROUND[3]

### A. Prayer Oils and Prayer Spaces

As noted above, Plaintiffs are Muslims civilly committed to the MSOP in Moose Lake, Minnesota. (Am. Compl. ¶ 1). Plaintiffs allege that it is common practice for Muslims to apply scented oil before praying. (Am. Compl. ¶ 22 n.10). Until the fall of 2015, Plaintiffs were permitted to obtain prayer oils from outside vendors with prior written permission from the MSOP's religious services volunteer and a supervisor. (Am. Compl. ¶ 22 n.10). The supervisor, Chad Mesojedec, who also serves as the MSOP's rehabilitation therapist director, curtailed the practice because prayer oils had a strong scent and could mask contraband. (Am. Compl. ¶ 22 n.10).

On October 15, 2015, Ha'Keem submitted a client request to Mesojedec asking to meet with four MSOP staff members, including Mesojedec and Kevin Moser, MSOP facility director, regarding his concerns about prayer oils, prayer times and locations, and "of controlling one[']s right to practice their/his faith under the Federal Religious Act."

---

[2] Defendants argue Plaintiffs' claims are precluded by a ruling in the class-action litigation of *Karsjens v. Jesson*, wherein the court found that MSOP's religious policies are reasonably related to legitimate therapeutic and institutional interests. 336 F. Supp. 3d 974, 991–93 (D. Minn. 2018). While this Court agrees that the *Karsjens* decision is relevant to the analysis here, the ruling only broadly references "MSOP's policies and practices relating to religion" which include "restrictions on room usage for religious meetings, clothing and jewelry restrictions, restrictions on religious articles, and restrictive policies governing meetings with clergy." *Id.* at 992. Accordingly, this Court finds it appropriate to address Plaintiffs' claims with respect to the specific enforcement of those policies as applied to Plaintiffs. Indeed, the *Karsjens* Court was of the "view that its conclusions regarding Plaintiffs' classwide claims will leave any individual claims in these and future lawsuits unresolved." *Id.* at 997.

[3] Plaintiffs' amended complaint contains strikethroughs differentiating it from their initial complaint. The Court interprets those strikethroughs as Plaintiffs' removal of certain allegations and claims. As such, text containing strikethroughs has been ignored.

(Am. Compl. ¶ 11). Mesojedec responded on October 21, 2015 indicating prayer oils would be "dispensed in a manner[] so as to not overwhelm peers utilizing the Volunteer Services/Education area." (Am. Compl. ¶ 11).[4] Mesojedec further noted he was not controlling individual prayer times, but was providing Muslim and Jewish clients options. (Am. Compl. ¶ 11). Mesojedec stated he and another MSOP staff member would meet with Ha'Keem as their scheduled permitted. (Am. Compl. ¶ 11).

On October 23, 2015, Ha'Keem submitted a client request to Scott Benoit, MSOP program manager, voicing concerns that Mesojedec did not understand his religious concerns, was trying to control prayer oils used by Muslims, and failed to accommodate their needs for five daily prayer sessions. (Am. Compl. ¶ 10). Benoit responded on November 2, 2015 noting that Ha'Keem's concern was outside his department of supervision, directing him to another MSOP staff member. (Am. Compl. ¶ 10).

On November 28, 2015, Ha'Keem submitted a client request to Troy Basaraba, MSOP security program manager, asking why Muslims cannot use or have prayer oil on their person or in their rooms or put it on before they enter Friday prayers. (Am. Compl. ¶ 13). Basaraba responded on December 9, 2015, stating that personal prayer oils were not allowed. (Am. Compl. ¶ 13).

Ha'Keem sent a client request on December 13, 2015 to Ann Linkert, MSOP security director, asserting that Muslim prayer oils used for Friday Jumah services were not a security concern and were part of Muslim religious practices. (Am. Compl. ¶ 12).

---

[4] A September 16, 2015 memorandum from Sandra Bryant, MSOP religious rights service coordinator, noted that the MSOP was facing "the issue of the allergies volunteers and other[s] have to the lingering smell of the prayer oils." (Am. Compl. ¶ 23).

Similarly, on December 19, 2015, Ha'Keem sent a client request to Moser, asking why prayer oils were considered a security threat and why personal prayer oils were prohibited. (Am. Compl. ¶ 14). Moser responded on December 22, 2015, directing Ha'Keem to the appropriate MSOP unit where he could request a policy change. (Am. Compl. ¶ 14).

On November 4, 2015, Ha'Keem submitted a client request to Terry Kneisel, MSOP assistant facility director, asserting that Mesojedec was "trying to stop Muslims from praying in the 'Religious Area' and 'controlling our oils [and] stopping Muslims from using them," as well as making Muslims pray in rooms that have restrooms. (Am. Compl. ¶ 18). Kneisel responded on November 23, directing Ha'Keem to the proper chain of command. (Am. Compl. ¶ 18).

On November 16, 2015, Mesojedec posted a memorandum titled "Client Use of Spiritual Rooms for Required Daily Personal Prayer" (the "Memo"). (Am. Compl. ¶ 19). Among other requirements, the Memo states "[p]rayer oil will not be provided for personal prayer." (Am. Compl. ¶ 19).

On November 20, 2015, Ha'Keem submitted a client request to Mesojedec, writing as the Islamic group liaison, indicating that Muslims would "stop attending their faith for now" until Mesojedec stopped placing restrictions on the practice of their faith. (Am. Compl. ¶ 20). Ha'Keem requested the ability to use personal prayer oils and for only Muslims to control these oils. (Am. Compl. ¶ 20). Mesjoedec responded on December 2, 2015, indicating the issue would be reviewed at the next Spiritual Practices Advisory Committee. (Am. Compl. ¶ 20).

On November 25, 2015, Ha'Keem submitted a client request to Peter Puffer, MSOP clinical director, asserting that Mesojedec was violating the "Federal Religious Act" by controlling his faith. (Am. Compl. ¶ 21). Puffer responded on December 12, 2015, noting the issue had been subject to a grievance and was dismissed, with current MSOP Policy #420-5310H1 guiding the possession of oils. (Am. Compl. ¶ 21).

On November 26, 2015, Mashood Yunus, the Islamic Outside Resource for MSOP Muslims, indicated MSOP was withholding prayer oils, dispensing "them a drop or two at a time." (Am. Compl. ¶ 34). Yunus claims Mesojedec was rationing prayer oils. (Am. Compl. ¶ 34). Ha'Keem followed-up with client request on November 29, 2015 concerning the Ihamma use of prayer oils. (Am. Compl. ¶ 33). Bryant responded that no changes in the way oils are dispensed will be made. (Am. Compl. ¶ 33).

Based on the foregoing, Plaintiffs allege Defendants have violated their constitutional rights to the free practice of religion under the First Amendment. Plaintiffs assert the Defendants' actions are not reasonably related to legitimate, therapeutic, bona fide, or penological interests. (Am. Compl. ¶¶ 24–25).

### B. Cross-Gender Pat Searches

In December 2015, Hughes was working in the MSOP kitchen. (Am. Compl. ¶ 29). As Hughes was exiting his work assignment in the kitchen, a female staff member wanted to wand Hughes and pat search him. (Am. Compl. ¶ 29). Hughes informed her that it was against his religion to have a female staff member pat search him. (Am. Compl. ¶ 29). Hughes also stated he believed it was not an emergency situation that would permit a female-performed pat search. (Am. Compl. ¶ 29).

On March 28, 2016, Ha'Keem submitted a client request to Scott Sutton, MSOP health services director, regarding pat searches by female staff. (Am. Compl. ¶ 17 n.9). Sutton noted health services does not do pat searches, but that in emergency medical situations the staff on duty will handle the medical issue regardless of gender. (Am. Compl. ¶ 17 n.9). Sutton indicated he did not have the staffing resources to ensure a particular gender was on duty at all times. (Am. Compl. ¶ 17 n.9). Sutton encouraged Ha'Keem to speak with his volunteer spiritual advisor. (Am. Compl. ¶ 17 n.9).

On May 10, 2016, Ha'Keem submitted a client request to Sara Kulas, MSOP unit director, expressing his concern that female MSOP staff conduct pat downs of Muslim men. (Am. Compl. ¶ 15). Kulas responded on May 12, 2016, noting she understood a female pat search is a conflict with Ha'Keem's Muslim beliefs, but that a male cannot always be guaranteed available for a pat search. (Am. Compl. ¶ 15).

On May 15, 2016, Ha'Keem submitted a client request to Benoit, noting it was forbidden for Muslims to permit a female staff member to perform any type of pat search and also forbidden for male staff members to perform a pat search if they touched private parts. (Am. Compl. ¶ 16). Benoit responded two days later, noting that the MSOP respects clients' religious beliefs, but that Kulas's May 12, 2016 response was accurate. (Am. Compl. ¶ 16).

On May 26, 2015, Ha'Keem submitted a client request to Moser again raising concerns related to female pat searches of Muslim clients. (Am. Compl. ¶ 17). Moser responded the following day, stating that he understood the issue to be under current litigation and noting he previously requested additional information from Ha'Keem's

religious volunteer on the issue. (Am. Compl. ¶ 17).

### C. Other Concerns

In addition to their claims regarding prayer oils and pat searches, Plaintiffs make various additional allegations on the exercise of their religion.

Ha'Keem asserts his prayer rug was ruined during his absence from the MSOP from July 29, 2014, to September 26, 2014. (Am. Compl. ¶ 32). Mandy Torgerson, MSOP property supervisor, responded to Ha'Keem's client request, stating that "[s]taff did not intentionally or maliciously damage" his prayer rug and that he could file a tort claim. (Am. Compl. ¶ 32). Besides religious concerns, Ha'Keem asserts he was denied due process in the destruction of his property.

On November 7, 2014, Ha'Keem and Hughes stepped out of the Jumah prayer service to discuss a religious issue because talking is not permitted during prayer services. (Am. Compl. ¶¶ 27–28). Nick Lammi, MSOP rehabilitation counselor, "confronted" Hughes about Ha'Keem threatening or intimidating him, and Hughes explained "there was no 'threat.'" (Am. Compl. ¶¶ 27–28). Ha'Keem and Hughes informed Lammi why they were outside the prayer room but Lammi responded that "he did not care," and that the conversation "was to be taken care of in the room." (Am. Compl. ¶ 27).

Larkin was put on Individualized Program Plan ("IPP") that was updated in March 2016. (Am. Compl. ¶ 35). Larkin was placed in Unit Omega 2, only allowed to attend "Core Groups and Psych educational modules. He will be allowed to received spiritual/religious services [i]n his living unit." (Am. Compl. ¶ 35). Larkin was not

permitted to attend any off-unit religious services with his peers. (Am. Compl. ¶ 35). The IPP was renewed every 10 to 14 days. (Am. Compl. ¶ 35). Besides religious concerns, Larkin asserts he was denied due process in IPP renewals. (Am. Compl. ¶ 35).

Finally, Plaintiffs assert (1) a lack of Jumah services if an Islamic chaplain is unavailable, (2) a no timely prayer at the end of Ramadan, (3) an inability to purchase essential Islamic items such as oils, "toothsticks," and incense, (4) improper handling of the Quran by MSOP staff, and (5) discarding of Plaintiffs' personal property by MSOP staff without notice. (Am. Compl. ¶ 30).

### D. Claims and Relief Requested

Throughout their complaint, Plaintiffs assert the actions of Defendants violated their First Amendment religious rights. (Am. Compl. *passim*).[5] In the section entitled "Claims for Relief," Plaintiffs only assert two claims: that Defendants, acting under color of state law, deprived Plaintiffs of their constitutional rights to freely practice their religion, which includes denying (1) use of prayer oils and (2) accommodated rooms for prayer. (Am. Compl. ¶ 38). Plaintiffs request declaratory and injunctive relief, as well as damages. (Am. Compl. ¶¶ A–G).

### III. ANALYSIS

### A. Legal Standard

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to

---

[5] As compared to their initial complaint, Plaintiffs have eliminated all claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc–2000cc-5, and the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb-4, in their amended complaint.

relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a *pro se* complaint, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that

permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B.    Free Exercise Clause of the First Amendment

"[A] person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief." *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997).

> Substantially burdening one's free exercise of religion means that the regulation "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."

*Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (quoting *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). While Plaintiffs are civilly committed persons, not prisoners, the Eighth Circuit has held their "liberty interests are considerably less than

those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). Thus, courts apply a modified version of the *Turner* test when analyzing constitutional claims of civilly committed persons, considering the "legitimate institutional and therapeutic interests" rather than "legitimate penological interests." *Karsjens*, 336 F. Supp. 3d at 992 (citing *Ivey v. Mooney*, 2008 WL 4527792, at *5, *10 (D. Minn. Sept. 30, 2008)).

### 1. Prayer Oils

Plaintiffs assert that prayer oils are essential to their Islamic faith. Whether usage of prayer oils is a sincerely held belief is a factual determination, so this Court will accept it as true in this motion to dismiss. *See Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996) (assuming inmate plaintiff's religious beliefs were sincere); *Murphy*, 372 F.3d at 983 (noting the sincerity of a religious belief is a factual determination, so courts should not dismiss such claims on summary judgment by concluding the claims are not genuine but should instead assume the belief is genuine). Moreover, Plaintiffs' use of prayer oils is not an inherently "purely secular view or personal preference" that could preclude a Free Exercise Clause claim. *See Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996) (questioning prisoner's request to be racially segregated as a sincerely held religious belief, but still noting courts "must be cautious in attempting to separate real from fictitious religious beliefs"). Thus, the Court turns to whether Plaintiffs have properly alleged that Defendants have substantially burdened their beliefs.

The substantial burden Plaintiffs allege is that Defendants control the supply of prayer oils at MSOP. Prior to late 2015, civilly committed Muslims at the MSOP were

permitted to purchase prayer oils from outside vendors through a two-layered request process. (Am. Compl. ¶ 22 n.10). Mesojedec curtailed that practice because prayer oils had a strong scent and could mask contraband, so the MSOP started dispensing the oils itself. (Am. Compl. ¶¶ 11, 13). The MSOP stated it would dispense prayer oils in a manner that would not overwhelm other MSOP clients using rooms adjacent to designated prayer rooms or invoke allergic reactions from lingering smells. (Am. Compl. ¶¶ 11, 23). On November 16, 2015, Mesojedec issued a memo that directed prayer oils would not be dispensed for daily personal prayers. (Am. Compl. ¶ 19). Plaintiffs' amended complaint makes clear, however, that MSOP Muslims are still receiving prayer oils "a drop or two at a time." (Am. Compl. ¶ 34).

Defendants argue that Plaintiffs' prayer oil claim is foreclosed by *Hodgson v. Fabian*, 378 F. App'x 592 (8th Cir. 2010). Hodgson, a Minnesota prisoner, brought suit under 42 U.S.C. § 1983 and RLUIPA. *Hodgson v. Fabian*, Case No. 08-cv-5120 (JNE/SRN), 2009 WL 2972862, at *1 (D. Minn. Sept. 10, 2009), *affirmed by Hodgson*, 378 F. App'x at 593. Hodgson, a Wiccan, challenged the prison's herb and prayer oil policies. *Hodgson*, 2009 WL 2972862, at *1. Initially, the prison permitted pagans and other religious groups to order and possess religious herbs provided that the herbs fit into a sandwich bag, did not have any warnings of possible medical problems, and could not serve as an aphrodisiac. *Id.* at *4. Inmates were also limited in the total number of herbs that could be ordered at one time. *Id.* After a review of concerns posed by that policy, the prison instituted a new policy that created a delineated list of ten herbs that could be purchased, placed a two-ounce limit on individual herbs, and restricted the number of

approved vendors from whom inmates could order. *Id.* at *5. With respect to prayer oils, inmates were permitted to use them during religious services in the prison chapel area, but not permitted to keep prayer oils in their cells. *Id.*

Hodgson argued that "Wiccans believe herbs are sacred gifts from the gods, have the ability to heal the body and soul, are used to commune with ancestors and gods, are used to bless and protect religious items and Wiccan practitioners, and are used to celebrate Wiccan religious holidays." *Id.* Hodgson asserted that the "new herb policy limits which deities Wiccan practitioners can worship" because "specific herbs are used to worship different deities." *Id.* Defendants contended that "the use and possession of herbs present a number of safety and security risks: herbs can be used to hide contraband; can be taken as a hallucinogenic; can be harmful to an inmate's health alone or in combination; and herbs can cause canine officers to falsely alert to drugs." *Id.* at *13. Further, defendants asserted the "prison's purpose in limiting the number of approved herb vendors was to ensure the vendors were reputable and to lessen the possibility that contraband could enter the facility." *Id.* With respect to prayer oils, defendants claimed "prayer oils are not allowed in cells because oils can be used as a weapon to throw at correctional officers or other inmates" and that "oils present a security risk with inmates selling or trading the oils." *Id.*

The district court granted summary judgment, finding the defendants' herb and prayer oil policies constituted compelling interests and were the least restrictive means of furthering that interest, satisfying RLUIPA. *Id.* at *13. The Eighth Circuit affirmed, concluding Hodgson's religious beliefs were not substantially burdened because the

defendants "provided evidence of multiple safety and security concerns supporting the policy" and the "evidence showed that the policy is the least restrictive means of furthering these compelling governmental interests." *Hodgson*, 378 F. App'x at 593.

This Court agrees with Defendants' argument that *Hodgson* forecloses Plaintiffs' claim. MSOP, through Mesojedec, determined that prayer oils raised two concerns: masking contraband and causing adverse reactions in other MSOP clients. As a result, MSOP limited prayer oils to religious services. These reasons were sufficient for the *Hodgson* court, and they are sufficient here, particularly where RLUIPA "encompass[es] a higher standard of review [of the government's policy] than that which applies to constitutional free exercise claims." *Murphy*, 372 F.3d at 986. Plaintiffs are still permitted prayer oils, though not in the quantity or manner they desire. This does not pose a substantial burden on their religious beliefs and the limitations imposed furthers MSOP's legitimate therapeutic and institutional interests. As such, Plaintiffs' prayer oils claim should not proceed.

### 2. Hallway Incident

Plaintiffs plead a single instance where Ha'Keem and Hughes were "confronted" for having a religious discussion in the hallway outside of prayer services. Ha'Keem and Hughes were told to have their conversation in the prayer room. Ha'Keem and Hughes asserted such a discussion is not possible because talking is prohibited during prayer.

Plaintiffs cannot allege this single incident substantially burdened their religious beliefs. *Trotter v. Ramsey*, 2015 WL 4163345, at *7 (W.D. Tenn. July 9, 2015) ("[I]solated incidents do not place a substantial burden on an inmate's exercise of

religion."); *Pfeil v. Lampert*, 11 F. Supp. 3d 1099, 1112 (D. Wyo. 2014) ("[A]n isolated incident fails to constitute a substantial burden."); *Mubashshir v. Moore*, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) ("Isolated acts or omissions . . . do not constitute a substantial burden on religious freedom."); *see also Brown v. Graham*, 470 F. App'x 11, 15 (2d Cir. 2012) (failure to provide prisoner a kosher meal on a single occasion does not rise to level of a substantial burden on prisoner's religious freedom); *Camacho v. Shields*, 368 F. App's 834, 835 (9th Cir. 2010) (interruption of inmate's prayers on one occasion did not constitute a substantial burden on inmate's free exercise of religion); *Randall v. McLeod*, 68 F.3d 470 (5th Cir. 1995) (per curiam) (failure to provide prisoner with a pork-free meal on two separate occasions during prison lockdown did not burden prisoner's right to freely exercise his religious beliefs). Because this single incident cannot constitute a substantial burden on Plaintiffs' religious beliefs, this claim should be dismissed.

### 3. Female-Performed Pat Search

Sometime in December 2015, Hughes was pat searched by a female MSOP employee while leaving his kitchen work assignment. Hughes informed her it was against his religious beliefs, but the pat down proceeded. Plaintiffs do not plead any other cross-gender pat down occurred. Instead, they only plead follow-up complaints to the MSOP administrative concerning female pat searches. The MSOP responded with its policy: that it cannot always guarantee a male MSOP staff member will be present to perform a pat search due to staffing resources.

Some courts have held that staffing concerns precipitating cross-gender pat

searches are insufficient to advance a compelling government interest. *See Forde v. Baird*, 720 F. Supp. 2d 170, 178–79 (D. Conn. 2010) (rejecting the government's assertion of a compelling government interest where its "arguments regarding how and why cross-gender pat searches promote safety and security at FCI Danbury are actually related to the staffing of the facility, not to its safety and security."); *see also Brooks v. Jackson*, 2013 WL 5339151, at *12 (S.D.N.Y. Sept. 23, 2013) ("Although the case law on point is limited, there is little question that cross-gender pat[-]and-frisks *can* substantially burden a prisoner's Free Exercise rights. But the line between what constitutes a substantial burden and what does not . . . is less clear."); *but see Montgomery v. Town of Colonie*, 2017 WL 4990627, at * 3 (N.D.N.Y. Oct. 30, 2017) (finding no cases "holding that a police officer violates the First Amendment by performing a cross-gender pat-frisk of an observant Muslim," noting that cases involving similar claims applied qualified immunity). Here, however, the Court need not reach the issue because Plaintiffs have only pleaded a single incident where a cross-gender pat search occurred. As stated above, single incidents cannot substantially burden Plaintiffs' religious beliefs. This claim should be dismissed. *See also Hill v. Blum*, 916 F. Supp. 470, 472–73 (E.D. Pa. 1996) (holding that a routine pat search of a Muslim inmate leaving a kitchen that included an examination of the inmate's genitals did not violate the inmate's First Amendment rights).

### 4. Prayer Rug

While Ha'Keem was absent from MSOP from July 2014 through September 2014, his prayer rug was damaged while in storage. Ha'Keem was notified he could file a tort

claim. There is no allegation that the MSOP burdened Plaintiffs by preventing possession of prayer rugs. In fact, the existence of this dispute in the first instance shows the MSOP permits possession of prayer rugs. There is no indication the rug was purposefully destroyed for any reason, religious or secular. While Ha'Keem was eventually required to dispose of his damaged rug, (Am. Compl. ¶ 32), he was informed of reimbursement procedures. This "isolated act of negligence [does] not violate an [Ha'Keem's] First Amendment right to free exercise of religion." *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009). Accordingly, this claim should be dismissed.

### 5.  Prayer Space

Plaintiffs assert their prayer space has a bathroom in it. Plaintiffs provide no further factual support for their claim. Nowhere do Plaintiffs allege that a restroom-less prayer chamber is a "central tenet" of their religious beliefs. *Patel*, 515 F.3d at 813. Plaintiffs do not allege this "substantially burdens" their religious beliefs. Without more, Plaintiffs' claim cannot proceed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 6.  Larkin's Placement

Larkin was placed in a different housing unit than the other plaintiffs. While in Unit Omega 2, Larkin could only engage in religious services in his living unit, rather than attend off-unit religious services with his peers. Nowhere does Larkin allege that attending religious services with his peers is a "central tenet" of his religious beliefs. *Patel*, 515 F.3d at 813. Larkin was still permitted to engage in religious activities. Larkin's desire to pray with specific peers does not render his placement in Unit Omega 2

a "substantial burden" on his religious beliefs. As such, this claim should be dismissed.

### 7. Remaining Claims

Plaintiffs make some additional claims: (1) a lack of Jumah services if an Islamic chaplain is unavailable, (2) a no timely prayer at the end of Ramadan, (3) an inability to purchase essential Islamic items such as "toothsticks" and incense, (4) improper handling of the Quran by MSOP staff, and (5) discarding of Plaintiffs' personal property by MSOP staff without notice. (Am. Compl. ¶ 30). Plaintiffs do not support these claims with any factual allegations. A complaint does not suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Therefore, these remaining "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" must be dismissed. *Iqbal*, 556 U.S. at 678.

### 8. Qualified Immunity for Religious Claims

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016). Courts examine "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

Here, Plaintiffs' claims do not establish constitutional violations. With respect to prayer oils, existing Eighth Circuit caselaw holds that regulation of prayer oils is

permissible. *Hodgson*, 378 F. App'x at 593. Plaintiffs' claims concerning the hallway incident, the cross-gender pat search, and the prayer rug damage, are isolated instances that do not constitute substantial burdens on the exercise of their religious beliefs. Further, even if Plaintiffs pleaded a claim involving multiple or repeated female-performed pat searches of Muslim men at MSOP, courts considering cross-gender pat searches implicating religious observances have applied qualified immunity. *Montgomery*, 2017 WL 4990627, at * 3; *Brown v. Bureau of Prisons*, 2017 WL 1234104, at *2 (D. Conn. Mar. 31, 2017); *Collins v. Scott*, 961 F. Supp. 1009, 1017 (E.D. Tex. 1997). As such, Defendants are entitled to qualified immunity on these particular religious claims.

As discussed above, Plaintiffs have failed to meet their pleading burden on their remaining claims: the prayer space, Larkin's placement, and the miscellaneous claims. These pleading deficiencies deprive the Court of the ability to analyze the claims fully, including whether Defendants are entitled to qualified immunity.

### C.    Due Process Claims

"To state a procedural due process violation, [a plaintiff] must first demonstrate the deprivation of a protected liberty or property interest." *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009) (citing *Senty-Haugen*, 462 F.3d at 886). The amount of process due is "determined by balancing the specific interest affected, the likelihood the challenged action would result in an erroneous deprivation of that right, and the burden of providing additional procedures, including administrative costs and burdens." *Bonner*, 552 F.3d at 676 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Again, while

Plaintiffs are civilly committed persons, not prisoners, the Eighth Circuit has held their "liberty interests are considerably less than those held by members of free society." *Senty-Haugen*, 462 F.3d at 886.

In the prison context, inmates enjoy no liberty interest in their choice of cells, transfer within the prison, or transfer to another prison. *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984). Larkin's placement within MSOP should be afforded the same discretion, particular when considering the therapeutic and institutional interests involved. As such, his due process claim regarding placement in Unit Omega 2 should be dismissed.

With respect to Ha'Keem's claim regarding the damage to his prayer rug, this claim should be dismissed as well. As the amended complaint notes, the rug was not damaged intentionally, but negligently. Ha'Keem was informed of tort procedures to seek recompense. Ha'Keem fails to plead any plausible due process claim.

## IV.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, (ECF No. 37), be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**.

[Signature on following page.]

Date: January 16, 2019                          *s/ Steven E. Rau*
                                         Steven E. Rau
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Ha'Keem, et al. v. Piper, et al.*
                                         Case No. 16-cv-348 (JNE/SER)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).