UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Maikijah Ha'Keem, Roy Hughes, Jimmy Booker, and Jacquard Larkin,<br><br>Plaintiffs,<br><br>vs.<br><br>Chad Mesojedec, Rehabilitation Therapist Director; Steve Sayovitz, Security Manager; Elizabeth Wyatt, Security Counselor; Kevin Schleret, Property Personnel; Mandy Torgerson, Property Supervisor; Kevin Moser, Facility Director MSOP–Moose Lake; Nick Lammi, Rehabilitation Counselor; Scott Benoit, Program Manager MSOP–Moose Lake; Terry Kneisel, Assistant Facility Director MSOP–Moose Lake; Peter Puffer, Clinical Director MSOP–Moose Lake,<br><br>Defendants. | Case No. 16-cv-348 (JNE/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Chad Mesojedec, Steve Sayovitz, Elizabeth Wyatt, Kevin Schleret, Mandy Torgerson, Kevin Moser, Nick Lammi, Scott Benoit, Terry Kneisel, and Peter Puffer's (collectively "Defendants") Motion for Summary Judgment [ECF No. 95]. For the reasons that follow, the Court recommends that the motion be granted.

**I.    Introduction**

Plaintiffs Maikijah Ha'Keem, Roy Hughes, Jimmy Booker, and Jacquard Larkin

(collectively "Plaintiffs") are civilly committed individuals housed at a facility maintained by the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. (Am. Compl. ¶ 6 [ECF. No. 36].) Plaintiffs are representing themselves pro se. Plaintiffs brought this lawsuit in February 2016 to challenge Defendants' application of a policy that Plaintiffs, who are Muslim, argue infringed on their ability to practice their faith. (*See* Am. Compl. ¶ 9.) Plaintiffs' only claim to survive a motion to dismiss is a First Amendment challenge to Defendants' policy which limits Plaintiffs' ability to keep scented prayer oils for their personal use. (Feb. 26, 2019 Ord. at 2–3 [ECF No. 59].)

## II.    Background

The Court incorporates by reference here the Background section of the District Court's Order on the motion to dismiss (*id.* at 2) and Magistrate Judge Rau's Report & Recommendation on the same [ECF No. 55 at 3–6]. Additional facts relevant to the motion for summary judgment are summarized below.

Plaintiffs' remaining claim challenges MSOP Policy 420-5310 on the Use of Controlled Items During Spiritual Ceremonies. (*See* Mesojedec Decl. ¶ 4 [ECF No. 99].) Among other things, the policy addresses religious groups' access to scented oils and incense. (*See* Mesojedec. Decl. Ex. 1 ¶ K [ECF No. 99-1].) Plaintiffs allege that the policy impacts them because scented oils are commonly applied by Muslims before praying. (Am. Compl. ¶ 22 n.10.) The policy provides that a "spiritual group" may possess up to three two-ounce bottles of scented oil (Mesojedec. Decl. Ex. 1 ¶ K), but makes clear that individuals are not permitted to keep the oils personally. The scented

oils are also diluted with a non-scented "carrier" oil such as jojoba oil "to minimize potential health hazards for persons with fragrance sensitivities who utilize the same areas where scented oils are used." (*Id.*)  The scented oils are secured and stored with the other spiritual group items. (*Id.*)  Under the policy, MSOP staff provide the prayer oils to Plaintiffs for use at their congregate services, such as group prayers ("Jumah"[1]), and holidays, such as Eid (Mesojedec Decl. ¶ 6), but do not permit Plaintiffs to keep oils in their cells or access them for individual prayers.

When the policy was created in 2010 it did not originally address prayer oils. (Mesojedec Decl. ¶ 4.)  Both Plaintiffs and Defendants agree the policy was revised in 2015 to limit the use of prayer oils in response to complaints from MSOP clients and staff. (*Id.* ¶¶ 4, 8; Am. Compl. ¶ 22 n.10.)  Defendant Mesojedec, the Director of Rehabilitation Therapy Services at MSOP in Moose Lake, attests that before the policy was revised, clients' use of prayer oils "was overwhelming to other clients and staff, actually making them physically ill.  Clients and staff reported allergic reactions, headaches, and nausea, and that prayer oil scents lingered for hours or in some cases days." (Mesojedec Decl. ¶¶ 1, 9.)  The revised policy also accounts for MSOP's concern that, if permitted in client rooms, the prayer oils could be used to mask the odors of contraband such as marijuana, tobacco, and homemade alcohol. (*Id.* ¶ 7.)  Plaintiffs argue that "these new procedures"—presumably referring to the revised policy— "significantly burden [their] ability to conform to the commandments of [their] faith."

---

[1] This word is sometimes spelled Jum'ah, Jumu'ah, or Jummah.

(Am. Compl. ¶ 20.)  The crux of the dispute in this case is whether MSOP Policy 420-5310 violates Plaintiffs' First Amendment right to free exercise of their religion because it does not permit Plaintiffs to keep prayer oils in their cells for personal use.

There is a second, related aspect of Plaintiffs' surviving claim.  Plaintiffs indicate that Defendants are "rationing" the prayer oils and "dispens[ing] them a drop or two at a time."  (Am. Compl. ¶ 34.[2])  The Court must therefore consider whether it would violate the First Amendment if, when dispensed for congregate services, the prayer oil was dispensed in limited quantities.

## III. Applicable Legal Standards

### A. Standard for Granting Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the case under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" if the evidence could support a jury verdict in the non-moving party's favor.  *Id.*  The Court views the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  The party opposing a properly supported motion for summary judgment may not rest on mere

---

[2] Plaintiffs' Amended Complaint includes some strike-through text which the Court interprets as indicating which portions of Plaintiffs' original Complaint they removed in the amendment.  As such, the Court ignores the stricken text.  Thus, the Court refers to ¶ 34 on page 29 of the Amended Complaint, not the stricken paragraph on page 27.

4

allegations or denials, but must cite to particular facts in the record showing there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Anderson*, 477 U.S. at 256.

"In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."  *Cooksey v. Boyer*, 289 F.3d 513, 515 (8th Cir. 2002).  There is no dispute as to the first element.  As to the second, there is no dispute that the right at issue is a constitutionally protected federal right—Plaintiffs' right to free exercise of religion under the First Amendment to the U.S. Constitution.  The only question for resolution by the Court, therefore, is whether they have raised a genuine issue of material fact as to whether Defendants wrongfully deprived them of that right.

**B.     Standard for Evaluating Plaintiffs' Claim of Violation of Their Right to Free Exercise of Religion**

The Court notes at the outset that much of the relevant caselaw on this topic arises from the prison context.  Although Plaintiffs are civilly committed, not incarcerated, prison-based cases are nevertheless instructive here since the Eighth Circuit has held that, like inmates, civilly committed individuals' "liberty interests are considerably less than those held by members of free society."  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

In order to succeed on a claim under the Free Exercise Clause of the First Amendment, Plaintiffs must establish that Defendants' challenged policy places a "substantial burden" on Plaintiffs' ability to practice their religion.  *See Patel v. U.S.*

5

*Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). A regulation will substantially burden a person's free exercise if the regulation (1) significantly inhibits "conduct or expression that manifests some central tenet of a person's individual religious beliefs"; (2) "meaningfully curtail[s] a person's ability to express adherence to his or her faith"; or (3) denies a person "reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Patel*, 515 F.3d at 813 (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)).

But it is not sufficient for Plaintiffs to show that a regulation substantially burdens the free exercise of their religious faith. Having made that showing, they must then show that the regulation was invalid. If an institutional policy infringes a civilly-committed individual's constitutional rights, courts in this District have applied a modified version of the four-part test outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987) to determine whether the restriction is valid. *See Karsjens v. Piper*, 336 F. Supp. 3d 974, 992 (D. Minn. 2018); *Ivey v. Mooney*, Case No. 05-cv-2666 JRT/FLN, 2008 WL 4527792, at *4 (D. Minn. Sept. 30, 2008) ("*Ivey I*"). In *Turner*, the United States Supreme Court determined that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. *Turner* identified four factors relevant to assessing the reasonableness of the regulation: (1) "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation

6

of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives." *Id.* at 89–90 (cleaned up) (citations omitted).

Civilly committed individuals like Plaintiffs "have liberty interests that are 'considerably less than those held by members of free society' but are 'entitled to more considerate treatment and conditions of confinement' than prisoners." *Banks v. Jesson*, Case No. 11-cv-1706 (SRN/LIB), 2017 WL 1901408, at *8 (D. Minn. May 8, 2017) ("*Banks III*") (quoting *Senty-Haugen*, 462 F.3d at 886). Accordingly, courts in this District have modified the *Turner* test to account for the unique liberty interests of MSOP clients when assessing whether a restriction on their First Amendment rights is constitutional. *E.g.*, *Karsjens*, 336 F. Supp. 3d at 992; *Banks III*, 2017 WL 1901408, at *8–9; *Ivey I*, 2008 WL 4527792, at *5. The modified factors are: (1) whether the MSOP policy at issue bears a rational relationship to legitimate institutional and therapeutic interests; (2) whether the MSOP client has alternative means of exercising the First Amendment right at issue; (3) whether and to what degree accommodation of the right would impact the institution, resources, staff, and other clients; and (4) whether simple and cost-effective alternatives exist that would meet MSOP's objectives. *See Ivey I*, 2008 WL 4527792, at *5, 10.

**IV.   Discussion**

    **A.   Whether the Restrictions Imposed by MSOP Policy 420-5310 on the Use of Prayer Oils Substantially Burden Plaintiffs' Free Exercise of Their Religion**

During their depositions, Plaintiffs testified about the significance of prayer oils.

7

Plaintiff Booker stated that the oils "complete [the] process" of cleansing and preparing to pray, and allow Muslims to keep their faith front of mind, akin to wearing a religious symbol such as a cross or a Star of David.  (Booker Dep. (First Bredeson Decl. Ex. 5[3]) at 49:19, 51:16–21 [ECF No. 98-1 at 70, 72].)  Plaintiff Hughes testified that the oils were important for Muslims to get "the full blessings" of prayer, and that the oils represented the "sweet smelling of paradise."  (Hughes Dep. (First Bredeson Decl. Ex. 1) at 16:7–8; 58:19 [ECF No. 98-1 at 4, 17].)  Plaintiff Ha'Keem indicated he applies the oils in order to be "respectful to the Creator."  (Ha'Keem Dep. (First Bredeson Decl. Ex. 4) at 15:11 [ECF No. 98-1 at 53].)  Plaintiff Larkin echoed those sentiments, saying that the scented oils were important because "You want to smell good before your Creator.  You want to be able to be pure before your Creator."  (Larkin Dep. (First Bredeson Decl. Ex. 3) at 53:22–25 [ECF No. 98-1 at 45].)  It is therefore clear that the use of prayer oils is personally significant for each of the Plaintiffs in connection with their religious faith.

But the record before the Court does not support a finding that MSOP's policy limiting prayer oils to congregate settings substantially burdened Plaintiffs' religious expression.  Instead, Plaintiffs testified that while wearing scented oils amounts to a longstanding "tradition" (*see* Larkin Dep. at 54:10), failing to use prayer oils was not a

---

[3] Defendants filed two declarations of Drew Bredeson, each of which attached excerpts from Plaintiffs' respective depositions.  The first declaration [ECF No. 98] was filed with their memorandum in support of their motion to dismiss, and the second [ECF No. 106] was filed with their reply memorandum.  The excerpts filed with the second Bredeson declaration do not discuss the significance of the use of prayer oils.  Unless otherwise noted, when the Court cites Plaintiffs' depositions, it refers to the excerpts filed with the first Bredeson declaration [ECF No. 98].

sin (*see* Booker Dep. at 55:25).  Plaintiffs agreed that Islam recognizes five key concepts or "pillars" (*see* Hughes Dep. at 39; Larkin Dep. at 30; Ha'Keem Dep. at 17)—of which prayer, but not prayer oils, is a key component.  They also discussed the ways in which their faith practice recognized exemptions and alternatives to these core requirements because "[e]verything in Islam is based on intention." (Hughes Dep. at 42:15.)  At one point in his deposition, Plaintiff Ha'Keem stated that prayer oils were "one main key" part of his faith practice and if he were not able to use prayer oils then "everything is void."  (Ha'Keem Dep. at 15:12–19.)  But he later contradicted that point, testifying that although he "should" have prayer oils in his room for personal use, his "prayers [were] still acceptable" without the oils since, "[inshallah], Allah knows best, I can't do that." (*Id.* at 37:9–19.)

This understanding of the role of prayer oils in Islam is echoed by the expert report of Rev. Martin Shanahan, a Chaplain with the Minnesota Department of Corrections (DOC).  (*See* Shanahan Report at 1–3 (First Bredeson Decl. Ex. 6) [ECF No. 98-1 at 80].)  Although Shanahan identifies as a Christian and was educated in that faith tradition, he has worked extensively with members of other faith traditions, including Islam, and serves on the Religious Practices Committee with other DOC Chaplains to advise the DOC on responding to inmate requests pertaining to religion and spirituality. (*Id.* at 1–2.)  He states that the Religious Practices Committee determined prayer oils should be limited to use in congregate settings after consulting with community Imams, outside religious resource volunteer Imams, and staff from the non-profit organization Counsel on American-Islamic Relations (CAIR).  (*Id.* at 2.)  Rev. Shanahan states that in

9

his experience attending Jumah prayer in the community and from speaking with Imams who lead the Jumah prayer in other facilities, use of prayer oils "is not an absolute requirement, but is rather an optional personal practice, by the individual in their faith, but not a requirement of the larger governing tradition." (*Id.*)  Rev. Shanahan states that CAIR has the same opinion.  (*Id.*)  This is reflected in CAIR's most recent publication on how correctional institutions can accommodate Islamic religious practice, which does not mention a requirement that prayer oils be used.  (*See generally A Correctional Institution's Guide to Islamic Religious Practices 2005*, Council on American-Islamic Relations (First Bredeson Decl. Ex. 6) [ECF No. 98-1 at 83].)

Plaintiffs offer no evidence of their own to contradict these points.  Likewise, the excerpts of deposition testimony provided by Defendants do not show that Plaintiffs were inhibited from meaningfully expressing their religious beliefs.  Indeed, apart from stray comments in the deposition testimony (which Plaintiffs do not specifically cite or rely upon in their responsive memorandum), there is no support in the record for Plaintiffs' conclusory statement that prayer oils are such a fundamental aspect of their faith practice that the application of MSOP Policy 420-5310 "violates . . . [their] right to freely practice their religion."  (Am. Compl. ¶ 26.)  In short, Plaintiffs have not offered evidence from which a reasonable factfinder could conclude that the policy imposes a substantial burden on the free exercise of their religion.

A number of courts in the Eighth Circuit have found that regulations imposing similar limitations—or even prohibitions—on possession of worship materials do not constitute a substantial burden on the practice of religion.  *See, e.g.*, *Hodgson v. Fabian*,

10

378 F. App'x 592, 593 (8th Cir. 2010) (affirming district court's determination on summary judgment that the plaintiff had not established that his inability to keep prayer oils in his cell or a delay in receiving his religious mail substantially burdened his religion); *Weir*, 114 F.3d at 821 (affirming district court's determination at a bench trial that the plaintiff had not shown a First Amendment violation where the plaintiff was a fundamentalist Christian and the prison offered worship services on a Friday, rather than a Sunday, and limited the number of books plaintiff could have in his cell to 25); *Kilgore v. King*, Case No. 13-cv-634 JRT/FLN, 2014 WL 4231540, at *8 (D. Minn. Aug. 8, 2014) *R. & R. adopted*, (D. Minn. Aug. 24, 2014) (concluding on summary judgment that the prison policy preventing plaintiff from receiving religious newsletters did not substantially burden his faith practice where plaintiff had only shown that the newsletters were important to help him "calibrate" his faith with other practitioners); *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1027 (D. Minn. 2010) (denying preliminary injunctive relief where the plaintiff had not presented sufficient evidence to conclude that prison policies prohibiting him from wearing a Kufi or displaying an Islamic medallion while outside his cell substantially burdened his religious practice).

Similarly here, the record does not support a conclusion that MSOP Policy 420-5310 significantly inhibits conduct or expression that manifests some central tenet of Plaintiffs' religious beliefs, meaningfully curtails Plaintiffs' ability to express their adherence to their faith, or denies Plaintiffs a reasonable opportunity to engage in activities that are fundamental to their religion. *Patel*, 515 F.3d at 813. The Court concludes that Plaintiffs have not met their burden to demonstrate that there is a genuine

11

issue of material fact as to the alleged substantial burden imposed by MSOP Policy 420-5310 on their ability to practice their religion. Accordingly, summary judgment is justified in favor of Defendants on Plaintiffs' claim that the policy violates their First Amendment rights.

### B. Whether Dispensing a Limited Quantity of Prayer Oils Substantially Burdens Plaintiffs' Free Exercise of Their Religion

The Amended Complaint alleges a separate, slightly different claim related to MSOP's handling of prayer oils. Plaintiffs also claim that the quantity of prayer oils dispensed for congregate services is insufficient, saying MSOP is "rationing" the prayer oils and "dispens[ing] them a drop or two at a time." (Am. Compl. ¶ 34.)

Beyond the conclusory claims in their Amended Complaint, Plaintiffs offer no evidence to support this claim and, indeed, the record evidence supports an opposite conclusion. Plaintiff Hughes testified that he sets up the community room for Friday Jumah prayers, so he arrives about five minutes before everyone else to set out the group's materials, including the oils. (Hughes Dep. at 50–52.) Hughes indicates that he uses the oils in this period, before the others have arrived, by putting "a good amount" in his hands and then rubbing the oils into his hands, beard, and clothing. (*Id.* at 51:8–17.) Plaintiff Ha'Keem testified that the oil is placed on the table by the door and that he or "any other brother standing up there that are Muslims" will dispense the oil, saying, "we'll put the oil in the person -- the individual's hand, and they rub it on them and have a seat." (Ha'Keem Dep. at 63:10–17.) Plaintiff Booker testified slightly differently, saying that the oils are passed around the crowd once they are seated, but also indicated

that MSOP staff are not involved in dispensing the oils or, therefore, controlling the quantity of oils dispensed. (Booker Dep. at 61:11–18.) Accordingly, there is no evidence from which a reasonable factfinder could conclude that MSOP is limiting the amount of oil that is dispensed at the congregational services, and this claim, too, must fail on summary judgment.

### C. Whether the Restrictions on Prayer Oils are Valid Under the Modified *Turner* Test

Because the Court concludes that Plaintiffs are entitled to summary judgment because they have not adduced evidence from which a reasonable factfinder could conclude that Defendants' policy as to the availability and use of prayer oils substantially burdened the free exercise of their religion, the Court need not look at whether such a burden was justified under the "modified *Turner* test." However, as the following discussion describes, even if the District Court disagrees with the Court's conclusions as to substantial burden, this Court would recommend summary judgment on the additional ground that the limitations imposed by Defendants pass muster under the modified *Turner* test.

#### 1. Whether Defendants' Application of Policy 420-5310 is Rationally Related to Legitimate Institutional and Therapeutic Interests

In assessing the first *Turner* factor, the Court considers whether the institutional and therapeutic objectives underlying Defendants' application of the Policy 420-5310 are legitimate and neutral, and whether the application of the policy is rationally related to the objectives. *See Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). It is Plaintiffs'

13

burden to prove that the restriction is not reasonably related to the legitimate interest it purports to further. *See Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991).

Defendants have offered evidence that the regulation of the oils is tied to the safety of MSOP residents, visitors, and staff. Before the policy was implemented, individuals reported that the scent of the oils "lingered for hours," was "overwhelming," and made them "physically ill," such as causing allergic reactions, headaches, and nausea. (Mesojedec Decl. ¶¶ 1, 9.) Indeed, Plaintiff Hughes acknowledged that concern when he testified during his deposition that one of the community volunteers who used the room on Saturday evenings—a day after the Jumah services—experienced such a strong reaction to the lingering smell of the oils that she had to be "rushed to the hospital." (Hughes Dep. at 62:1–6.)

Defendants also argue the policy serves a security purpose because, if permitted in client rooms, the prayer oils could be used to mask the odors of contraband such as marijuana, tobacco, and homemade alcohol. (Mesojedec Decl. ¶ 7.)

A court in this District has previously considered a challenge to a prison policy that prohibited inmates from keeping prayer oils in their cells. *See Hodgson v. Fabian*, Case No. 08-cv-5120 (JNE/SRN), 2009 WL 2972862, at *5 (D. Minn. Aug. 19, 2009), *R. & R. adopted in relevant part*, (Sept. 10, 2009). In *Hodgson*, the plaintiff, a Wiccan, sued prison officials for several alleged violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Among those was a challenge to the prison policy permitting inmates to use prayer oils during religious services in the chapel area, but not to keep prayer oils in their cells. *Id.* The magistrate judge

14

recommended granting the defendants' motion for summary judgment on that claim, finding the plaintiff had failed to establish that his inability to keep prayer oils in his cell substantially burdened his religion, and even if he had, that the prison's prohibition on prayer oils in cells was based on safety and security concerns, which were compelling interests. *Id.* at *13. The district judge affirmed that finding, *id.* at *1, as did the Eighth Circuit. *See Hodgson*, 378 F. App'x at 593 ("We agree with the district court that Hodgson did not establish that either his inability to keep prayer oils in his cell or a delay in receiving his religious mail substantially burdened his religion.").

The same is true here. Defendants have submitted evidence that safety and security concerns underlie the policy, and Plaintiffs have not offered any evidence to the contrary. Accordingly, there is no genuine issue of material fact that Policy 420-5310 is based on legitimate and neutral institutional objectives. Factor 1 favors Defendants.

### 2. Whether Plaintiffs Have Alternative Means of Exercising the First Amendment Right at Issue

The second *Turner* factor examines whether Plaintiffs have alternative means of practicing their faith, since a person in custody "need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." *Murphy*, 372 F.3d at 983.

Under Policy 420-5310, Plaintiffs can use prayer oils in congregate settings, including weekly prayers and holiday services. In those settings, Plaintiffs are able to dispense the oils and use them as they see fit. The policy also does not limit Plaintiffs' ability to keep other religious materials in their cells or to engage in personal spiritual

15

practices. Nothing in the record indicates that other aspects of Plaintiffs' religious expression are curtailed, such as their ability to observe religious holidays (Ha'Keem Dep. at 16:5–16), pray daily (*id.*), wear religious head coverings (Hughes Dep. at 52:8–22), or eat halal food (Larkin Dep. at 35:16–23). Plaintiffs have not demonstrated that they lack a sufficient alternative means of practicing their religion, so the second modified *Turner* factor also favors Defendants.

### 3. Whether and to What Degree Accommodating the Right Would Impact the Institution, Resources, Staff, and Other Clients

Defendants have offered evidence that unlimited use of prayer oils is a threat to the safety of MSOP staff, visitors, and clients, and poses potential security concerns. Plaintiffs bear the burden of showing otherwise. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.") Plaintiffs have offered no evidence about how their interest in personal use of prayer oils can be accommodated in a way that would mitigate these concerns. In the absence of such a showing, this factor favors Defendants.

### 4. Whether Simple and Cost-Effective Alternatives Exist that Would Meet MSOP's Objectives

The fourth *Turner* factor is similar to the third in that it considers the availability of alternatives to the existing restriction. "*Turner* does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing

16

more than a *de minimis* cost to the valid penological goal." *Overton*, 539 U.S. at 136. Here, again, Plaintiffs have not suggested any alternative to MSOP's policy that would account for MSOP's safety and security concerns. This factor likewise favors Defendants.

## V. Recommendation

The Court concludes that Plaintiffs have not adduced evidence from which a reasonable factfinder could conclude that their First Amendment right to the free exercise of their religion was substantially burdened by the application of MSOP Policy 420-5310. Moreover, even if they had raised a genuine issue of material fact on the issue of substantial burden, they have not shown that the regulation of prayer oils is not reasonably related to legitimate therapeutic and institutional interests.

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendants Chad Mesojedec, Steve Sayovitz, Elizabeth Wyatt, Kevin Schleret, Mandy Torgerson, Kevin Moser, Nick Lammi, Scott Benoit, Terry Kneisel, and Peter Puffer's Motion for Summary Judgment [ECF No. 95] be **GRANTED**; and **JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 30, 2020

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the

District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).